# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MARSHALL L. NASH**                                                                                **PLAINTIFF**

**v.**                                   **Case No. 4:20-cv-1320-LPR**

**LITTLE ROCK HOUSING AUTHORITY**
**d/b/a MHA, and**
**LITTLE ROCK BOARD OF**
**COMMISSIONERS**                                                          **DEFENDANTS**

## ORDER

Pending before the Court is Plaintiff Marshall L. Nash's Motion to Remand.[1] The Little Rock Housing Authority d/b/a Metropolitan Housing Alliance and the Little Rock Housing Authority Board of Commissioners have responded.[2] On September 14, 2021, the Court held a hearing on the Motion. For the reasons that follow, the Court now GRANTS the Motion to Remand.

---

[1] Pl.'s Mot. to Remand (Doc. 5). Mr. Nash, acting *pro se*, also seeks costs and attorney's fees pursuant to 28 U.S.C. § 1447(c). *Id.* at 16. That statute provides that "[a]n order remanding [a] case *may require* payment of just costs and any actual expenses, including attorney fees, incurred as the result of the removal." 28 U.S.C. 1447(c) (emphasis added). Mr. Nash is a licensed attorney, but that does not entitle him to fees. The Supreme Court has pointed out that "the word 'attorney' assumes an agency relationship. . . . ." *Kay v. Ehler*, 499 U.S. 432, 435–36 (1991). Of course, Mr. Nash cannot be an agent of himself. So such a relationship is not present here. Also, in *Kay*, the Supreme Court held that *pro se* plaintiffs are not entitled to recover attorney's fees under 42 U.S.C. § 1988. 499 U.S. at 438. The Court can find no principled reason distinguishing the Supreme Court's holding with respect to a civil rights statute and the fee shifting provision of § 1447(c). Thus, Mr. Nash will not receive fees for representing himself. In any event, the governing precedent and the language of § 1447(c) make crystal clear that I have the discretion to order fees and costs where a defendant "lack[s] an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). That does not mean I must order costs and fees where a defendant "lack[s] an objectively reasonable basis for seeking removal." *Id.* I choose to exercise my discretion by not awarding costs and fees here. I do not believe that Defendants were acting in bad faith, using gamesmanship, or seeking to delay this case. Given the relative paucity of caselaw expounding upon what makes an asserted federal defense "colorable," it was worth the old college try.

[2] Defs.' Resp. to Mot. to Remand (Doc. 10).

## Background and Procedural History

On October 15, 2020, Mr. Nash filed his *pro se* Complaint in Arkansas state court.[3] Mr. Nash is an Arkansas resident and worked for Defendants (MHA and the Board) between 2014 and the date of his resignation, April 12, 2019.[4] MHA is an Arkansas corporation organized pursuant to Arkansas Code Annotated section 14-169-201 *et seq.*, having its principal place of business in Arkansas.[5] The Board comprises five members "whose stated role is to establish goals, approve policy and budgets, and provide general direction to" the MHA.[6]

Mr. Nash alleges defamation.[7] Specifically, Mr. Nash alleges that Defendants told federal investigators that Mr. Nash "refused to attend" a meeting, was suspended and placed on unpaid administrative leave, and that he resigned while on unpaid leave.[8] Mr. Nash alleges that all of those statements are false.[9] Mr. Nash alleges that federal investigators included the allegedly false statements in an official report.[10] Mr. Nash alleges that "the statement regarding Plaintiff's employment status of [a]dministrative [l]eave or suspension was printed in articles for public consumption," and that this false statement "is memorialized into perpetuity via the internet."[11] According to Mr. Nash, Defendants' statements and their subsequent disseminations by third parties injured Mr. Nash's reputation.[12]

---

[3] Pl.'s Compl. (Doc. 2).

[4] *Id.* ¶ 4.

[5] *Id.* ¶ 2; Defs.' Resp. to Mot. to Remand (Doc. 10) ¶ 5.

[6] Pl.'s Compl. (Doc. 2) ¶ 3.

[7] See *id.*

[8] *Id.* ¶¶ 5, 7–9, 26.

[9] *Id.* ¶¶ 10–12, 30.

[10] *Id.* ¶ 27.

[11] *Id.* ¶¶ 29, 30.

[12] *Id.* ¶ 31.

On November 9, 2020, Defendants removed the case to this Court.[13] Defendants rely on their relationship with the U.S. Department of Housing and Urban Development ("HUD") to get into federal court. Defendants assert that "they were authorized by federal law and MHA's contract with HUD to act for a federal officer, namely HUD, in executing duties under federal law."[14] Defendants also say that HUD "direct[s] and control[s] how the MHA administer[s] housing benefits through its contracts with MHA through a detailed and comprehensive federal regulatory scheme and regularly-issued guidance by HUD."[15]

Defendants assert that a former MHA employee, Dana Arnette, filed a "whistleblower reprisal complaint through the HUD Office of the Inspector General."[16] In that whistleblower complaint, Ms. Arnette said that she "was fired for her disclosure that [Mr. Nash], who was serving as a Special Advisor to the Board, was neglecting his job duties, thus amounting to a gross waste of HUD funds and gross mismanagement of HUD's contract with the MHA."[17] This whistleblower complaint, Defendants assert, triggered an investigation by the OIG.[18] Investigators questioned a Board member about Ms. "Arnette's report of HUD funds being misused through [Mr. Nash's] failure to perform his job and about [Mr. Nash's] termination of [Ms.] Arnette following her report of the misuse."[19] Defendants say that the Board member's responses constitute the allegedly defamatory statements.[20]

---

[13] Defs.' Notice of Removal (Doc. 1).

[14] Id. ¶ 28.

[15] Id.

[16] Id. ¶ 12.

[17] Id.

[18] Id. ¶ 15.

[19] Id.

[20] See id. ¶ 17.

3

The OIG report containing the allegedly defamatory statements was completed on June 21, 2019.[21]  Sometime later, some of these statements in the OIG report were published online by a media outlet.[22]  For instance, the media outlet reported that Defendants "voted unanimously on April 9 to put Nash, who was serving as the 'special adviser' to the board, on administrative leave."[23]  Defendants state that "the published information that is the basis for Plaintiff's alleged harm was obtained by the news outlet through the Freedom of Information Act, 5 U.S.C. § 552."[24]

Defendants' primary argument is that this Court has jurisdiction over this case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[25]  In a nutshell, Defendants argue that they made the allegedly defamatory statements while acting under the color and direction of HUD.[26]  As such, Defendants contend that federal officer removal is proper.

Alternatively, Defendants say that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).[27]  In a nutshell, Defendants argue that multiple "serious federal interest[s]" are implicated by Mr. Nash's complaint and thus give rise to federal question jurisdiction.[28]  For instance, Defendants assert that a serious federal interest "exists in interpreting whether a public entity receiving and charged with distributing federal funds is liable for statements made while participating in a federal investigation."[29]

---

[21]  Ex. A to Defs.' Mot. to Dismiss (Doc. 4-1) at 3.

[22]  Ex. 2 to Pl.'s Compl. (Doc. 2) at 6.

[23]  *Id.*

[24]  Defs.' Notice of Removal (Doc. 1) ¶ 39.

[25]  *Id.* ¶¶ 1, 20.

[26]  *See id.* ¶¶ 1, 34–35.

[27]  *Id.*

[28]  *Id.* ¶¶ 49–51.

[29]  *Id.* ¶ 49.

**Discussion**

Mr. Nash disputes both asserted bases for subject matter jurisdiction.[30] Defendants bear the burden of establishing that removal was proper.[31]

*Federal Officer Removal*

The federal officer removal statute "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction."[32] The statute allows a defendant to remove a state court action "brought against the 'United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office ….'"[33] Defendants' removal is proper only "if [Defendants], in carrying out the 'acts' that are the subject of [Mr. Nash's Complaint], [were] 'acting under' any 'agency' or 'officer' of 'the United States.'"[34] That Defendants are not per se a federal agency or federal officers does not foreclose federal officer removal. "Government contractors fall within the terms of the federal removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision."[35]

The Eighth Circuit instructs that "[f]our elements are required for removal under § 1442(a)(1):

---

[30] Pl.'s Mot. to Remand (Doc. 5) at 8, 13–14. The Court's reasons for granting the Motion to Remand with respect to federal officer removal are different than the reasons argued by Mr. Nash. This is not a problem because the Court has an independent duty to determine whether it has subject matter jurisdiction.

[31] *See Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002) ("The party opposing remand has the burden of establishing federal subject-matter jurisdiction.").

[32] *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984).

[33] *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 145 (2007) (emphasis in original) (quoting 28 U.S.C. § 1442(a)(1)) .

[34] *Id.* at 146 (quoting 28 U.S.C. § 1442(a)(1)).

[35] *Id.* at 153.

>(1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a "person," within the meaning of the statute.[36]

Even assuming the other three elements are met, Defendants have not presented a colorable federal defense.

In their Notice of Removal, Defendants said they have "a colorable defense of sovereign immunity as [a] government contractor."[37] The Notice of Removal didn't explain the defense or cite any authority supporting the defense. In their Response to the Motion to Remand, Defendants didn't even use the phrase "sovereign immunity" much less provide any reasoned argument on why it would be applicable here.[38] And in their Motion to Dismiss, Defendants did not actually assert this defense.[39] At the motion hearing, Defendants conceded that they do not have a colorable sovereign immunity defense.[40]

In their Notice of Removal, Defendants said they have a colorable federal defense arising out of the Privacy Act of 1974, 5 U.S.C. § 552a.[41] The Notice of Removal said that "Defendants . . . have a colorable defense of preemption" under that Act, "which governs the use of the

---

[36] *Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012). The "colorable federal defense" element has been read into the statute by the Supreme Court in an attempt to avoid the serious constitutional problem that would be presented if the statute did not include such a requirement. *See Mesa v. California*, 489 U.S. 121, 137 (1989) (stating that the elimination of the federal defense requirement from the federal officer removal statute "would eliminate the substantive Art[icle] III foundation of § 1442(a)(1) and unnecessarily present grave constitutional problems"). Mine is not to reason why, mine is but to do or die.

[37] Defs.' Notice of Removal (Doc. 1) ¶ 38.

[38] *See* Defs.' Resp. to Pl.'s Mot. to Remand (Doc. 10) at 7 (stating that "Defendants have asserted federal defenses regarding privilege, immunity, and official justification").

[39] *See* Defs.' Mot. to Dismiss (Doc. 4) at 8 (suggesting an immunity defense arising under Arkansas statutory law).

[40] Sept. 14, 2021 Hr'g Tr. at 17. At the motion hearing, the Court asked Defendants whether they were still pressing sovereign immunity as a colorable federal defense. *Id.* at 15. Defendants said that they had not "focused on" this defense. *Id.* at 16. In response to the Court's comment that it didn't seem like Defendants had a good derivative immunity argument, Defendants' counsel said, "I wouldn't disagree[,] which is in all candor . . . one reason why I didn't focus on that really in the papers." *Id.* at 7.

[41] Defs.' Notice of Removal (Doc. 1) ¶ 39; *see also* Sept. 14, 2021 Hr'g Tr. at 11.

information contained within the 'Report of Investigation' . . . ."[42] That is the sum of Defendants' contention. Defendants did not explain how the Privacy Act preempts Mr. Nash's defamation claim. Aside from generally referencing the statute, Defendants did not point to any statutory authority supporting the defense. Defendants did not cite one case suggesting the availability of such a defense. Defendants' Response to Mr. Nash's Motion to Remand is no different. Indeed, the Privacy Act does not appear in the section of Defendants' Response addressing colorable federal defenses.[43] In their Motion to Dismiss, Defendants did not make any reference to the Privacy Act.[44] At the motion hearing, Defendants generally cited the Act and said "that there is a federal defense and a specific federal question to determine whether a public entity charged with distributing federal funds is liable for a statement made [while] participating in a mandatory federal investigation."[45] However, with unusual and appreciated candor, Defendants admitted that this is a "novel argument," lacking any statutory or caselaw support.[46] It's more than novel. It's entirely unsupported by any authority or legal argument.

Finally, in their Notice of Removal, Defendants said they have a "colorable defense that the published information that is the basis of Plaintiff's alleged harm was obtained" through the Freedom of Information Act."[47] That is all Defendants said on this "defense." Defendants again generally referenced the FOIA statute but did not cite any specific statutory provision supporting the existence of this defense. Defendants did not cite any caselaw either. Defendants did add a

---

[42] Defs.' Notice of Removal (Doc. 1) ¶ 39.

[43] Defs.' Resp. to Pl.'s Mot. to Remand (Doc. 10) at 6–7.

[44] *See* Defs.' Mot. to Dismiss (Doc. 4).

[45] Sept. 14, 2021 Hr'g Tr. at 11.

[46] *Id.* at 12–13.

[47] Defs.' Resp. to Pl.'s Mot. to Remand (Doc. 10) at 7; *see also* Sept. 14, 2021 Hr'g Tr. at 13 (stating that FOIA provides "a colorable defense . . . to determine whether an entity like the housing authority can be liable or whether they have a colorable defense to defamation following the distribution of information that's made pursuant to a FOIA request . . . .").

7

drop of substance to their FOIA argument in their Response to Mr. Nash's Motion to Remand. Defendants said that their "compliance with FOIA law acts as a defense to a defamation claim because Defendants were justified in the release of that information."[48] Defendants cited no specific statutory provisions to support this contention. Defendants cited no caselaw supporting this contention. At the motion hearing, Defendants also candidly characterized this argument as "novel."[49] Again, it's more than novel. It's entirely unsupported by any authority or legal argument. None of these "novel" arguments presents a colorable federal defense.[50]

Defendants have not established the availability of a colorable federal defense. It is true that the Eighth Circuit does not require that a federal defense "be clearly sustainable in order to support removal under § 1442(a)(1)."[51] But this can't mean that Defendants need only vaguely and generally raise broad immunity concepts and federal statutes to meet their burden of establishing a colorable federal defense. Such a capacious interpretation would vitiate this element entirely. [52] And it would conflict with precedents like *Mesa v. California*.[53]

---

[48] Defs.' Resp. to Pl.'s Mot. to Remand (Doc. 10) at 7.

[49] Sept. 14, 2021 Hr'g Tr. at 14.

[50] Defendants did present other "novel" arguments in their Notice of Removal. Defendants said that they "have a colorable defense that the alleged defamatory statements were privileged communications made during a federal investigation." Defs.' Notice of Removal (Doc. 1) ¶ 41. As with Defendants' other defenses, they cite no authority for this proposition. Defendants also said that they "have a colorable defense that the information contained in the Report that is the basis of Plaintiff's complaint was erroneously included by a federal OIG investigator." *Id.* ¶ 42. No support or developed argument for this proposition either. Defendants also raised Mr. Nash's failure to exhaust administrative remedies as a colorable federal defense. Still, no support or developed argument.

[51] *Jacks*, 701 F.3d at 1235.

[52] Defendants never once mention a federal defense in their Motion to Dismiss. *See* Defs.' Mot. to Dismiss (Doc. 4). In that Motion, Defendants present extensive coverage of their "'qualified privilege to publish a defamatory statement in good faith to protect one's interest . . . .'" *Id.* at 8 (quoting *Richmond v. Southwire Co.*, 980 F.2d 518, 520 (8th Cir. 1992)). This may be true, but the problem for Defendants is that this qualified privilege is a creature of Arkansas state law. Defendants also assert a right to immunity. *Id.* at 10. But like their qualified-privilege argument, the right to immunity Defendants assert in their Motion to Dismiss arises under Arkansas law—not federal law. *See id.* (citing Ark. Code Ann. § 21-9-301).

[53] 489 U.S. at 121.

No case speaks directly to what "colorable" means in this specific context. But there is caselaw interpreting that word in a different removal-remand context. In analyzing whether a plaintiff has fraudulently joined a non-diverse defendant under 28 U.S.C. § 1446, the Eighth Circuit has looked to see whether a "colorable" cause of action exists against the nondiverse defendant.[54] "[T]hat is, if the state law *might* impose liability on the [nondiverse] defendant under the facts alleged . . . ."[55] In that context, the Eighth Circuit appears to define "colorable" as "describ[ing] an alleged cause of action that is reasonable, but speculative."[56] Perhaps put a bit differently, a defense is "colorable" if it has "a reasonable basis in law and fact"—whether or not it would ultimately succeed.[57] Defendants have not come close to meeting this standard. There is nothing to suggest any of the asserted federal defenses are colorable. No caselaw support. No statutory support. No treatise support. No law review support. And no developed argument from counsel as to why heretofore unknown federal defenses should be recognized.

### *Federal Question Jurisdiction*

As mentioned, Defendants also ground their removal on federal question jurisdiction.[58] Under 28 U.S.C. § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Relatedly, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," can be removed to federal court.[59] Under Eighth Circuit precedent, "the question whether a claim 'arises

---

[54] *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003).

[55] *Id.*

[56] *Id.* at 810 n.10.

[57] *See Knudson v. Systems Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011) (for fraudulent-joinder, a defendant must establish that a plaintiff's claim against a nondiverse defendant has "no reasonable basis in law and fact").

[58] Pl.'s Notice of Removal (Doc. 1) ¶ 44.

[59] 28 U.S.C. § 1441(a).

under' federal law must be determined by reference to the 'well-pleaded complaint.'"[60] The Supreme Court has explained that the well-pleaded complaint rule allows federal jurisdiction "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[61] In the Eighth Circuit, this means that a plaintiff (like Mr. Nash) can avoid federal jurisdiction "by exclusive reliance on state law."[62] On the other hand, "[f]ederal jurisdiction exists if the well-pleaded complaint establishes that either federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[63]

Defendants rely on this latter contingency.[64] Defendants do not (for good reason) argue that federal law creates Mr. Nash's cause of action. Instead, Defendants ground their federal question argument on a "longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction," which allows for federal question jurisdiction over "state-law claims that implicate significant federal issues."[65] The Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing* set a high bar for defendants seeking to base federal question jurisdiction on a state law claim. *Grable* said that federal question jurisdiction may exist if a plaintiff's "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any

---

[60] *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

[61] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[62] *Baker v. Martin Marietta Materials, Inc.*, 745 F.3d 919, 923 (8th Cir. 2014) (quotations omitted).

[63] *Great Lakes Gas*, 843 F.3d at 329.

[64] *See* Defs.' Notice of Removal (Doc. 1) ¶ 45 (acknowledging that Mr. Nash's claim arises under state law).

[65] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); Defs.' Notice of Removal (Doc. 1) ¶ 45.

congressionally approved balance of federal and state judicial responsibilities."⁶⁶  Under Eighth Circuit precedent, [t]his rule applies only to a 'special and small category' of cases that present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous … cases.'"⁶⁷

*Grable* does not support federal question jurisdiction in this case.  To prevail on a defamation claim under Arkansas law, a plaintiff must prove: "(1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages."⁶⁸  None of the just-recited elements presents "'a nearly pure issue of [federal] law . . . .'"⁶⁹  In *Grable*, the Supreme Court held that federal question jurisdiction existed when a plaintiff's state law quiet title action depended upon whether an IRS notice of a tax sale complied with a federal statute.⁷⁰  Here, on the other hand, no federal law determines the outcome of Mr. Nash's defamation claim.  It follows, then, that this claim has not necessarily "raise[d] a stated federal issue . . . ."⁷¹  Defendants therefore fail on the first step of the *Grable* test.

Defendants more or less repackage their colorable-federal-defense arguments to try and fit them into the *Grable* framework.  In their Notice of Removal, Defendants said that the "'Report of Investigation[,]' which is the subject of Plaintiff's complaint was governed by the Privacy Act

---

⁶⁶ *Grable*, 545 U.S. at 314.

⁶⁷ *Great Lakes Gas*, 843 F.3d at 331 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699–700 (2006) (citation and quotation marks omitted)).

⁶⁸ *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 444, 47 S.W.3d 866, 876 (2001).

⁶⁹ *Great Lakes Gas*, 843 F.3d at 331 (quoting *Empire Healthchoice*, 547 U.S. 699–700 (citation and quotation marks omitted).

⁷⁰ *Grable*, 545 U.S. at 310–11.

⁷¹ *Id.* at 314.

of 1974."[72]  Defendants also said that the media outlet obtained the report through the Freedom of Information Act.[73]  Defendants generally referenced these statutes to argue that "a serious federal interest exists in interpreting whether a public entity receiving and charged with distributing federal funds is liable for information released by a federal agency in violation of" or pursuant to either of these statutes.[74]  Defendants did not develop this argument.  They cited no specific statutory sections, nor did they suggest that the interpretation of a specific statutory section was necessary.  They did not provide some complete-preemption argument or any other developed preemption argument.  Defendants' cursory references to federal statutes are not enough.  Moreover, it is doubtful that these statutes (if they have any bearing at all) allowed Defendants to knowingly lie about Mr. Nash.  And whether the report was properly released has no bearing on the defamation claim here.

Defendants' other arguments are similarly bare.  In their Notice of Removal, Defendants suggest that Mr. Nash's Complaint raises a federal question because Mr. Nash alleged that "Defendants' blatantly false statements to Federal Investigators is a federal crime punishable by imprisonment, and it stands [to] reason that the victim of such crimes (Plaintiff) should be compensated . . . ."[75]  In context, this bit of hyperbole is not an embedded federal claim.  Mr. Nash is not volunteering to federally prosecute Defendants.  Mr. Nash's defamation claim does not depend on Mr. Nash proving that Defendants violated any federal law.

Finally, in their Notice of Removal, Defendants said that federal question jurisdiction is proper because their "tortious acts arose out of their participation in a federal investigation under

---

[72] Defs.' Notice of Removal (Doc. 1) ¶ 48.

[73] *Id.*

[74] *Id.*  Defendants repeated this argument without reference to any statute.  *Id.* ¶ 49.

[75] Pl.'s Compl. (Doc. 2) ¶ 42; *see also* Defs.' Notice of Removal (Doc. 1) ¶ 46.

41 U.S.C. § 4712 and while Defendants were carrying out their duties as required by the HUD regulations."[76]  But what does that have to do with Mr. Nash's defamation claim?  For federal question jurisdiction, the Supreme Court makes clear that "a case *may not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."[77]  Defendants have failed to establish federal question jurisdiction.

## Conclusion

For the foregoing reasons, Mr. Nash's Motion to Remand is GRANTED.  The Clerk of the Court is directed to immediately transfer this case to the Circuit Court of Pulaski County, Arkansas.  The Clerk is then directed to close this case.

IT IS SO ORDERED this 20th day of September 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[76] Defs.' Notice of Removal (Doc. 1) ¶ 47.
[77] *Caterpillar*, 482 U.S. at 393.